## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KYLE LINDSEY, and<br>ZAYNE MANN,<br><br>    Plaintiffs,<br><br>v.<br><br>1. BRANDON HYLER, individually,<br>2. BRANDON HYLER, in his official capacity as a Webbers Falls Police Officer,<br>3. THE CITY OF WEBBERS FALLS, OKLAHOMA,<br>4. LARRY RUIZ, in his official capacity as Chief of Police for the City of Webbers Falls, and<br>5. BOB ROSS, in his official capacity as Mayor of the City of Webbers Falls,<br><br>    Defendants. | Case No. CIV-16-506-RAW |

## **ORDER**[1]

Plaintiffs filed this action on November 17, 2016, bringing claims arising from their accident on a utility task vehicle (hereinafter "UTV") allegedly caused by Defendant Officer Hyler's police pursuit of them following a minor traffic violation. Plaintiffs filed an Amended Complaint on January 27, 2017. Now before the court are the motions for summary judgment filed by Officer Hyler [Docket No. 106] and by the City of Webbers Falls (hereinafter "Webbers Falls")[2] on its own behalf and on behalf of the Defendants Ruiz and Ross in their official capacities (hereinafter "Supervisory Defendants"). [Docket No. 107].

---

[1]     For clarity and consistency herein, when the court cites to the record, it uses the pagination assigned by CM/ECF.

[2]     Webbers Falls informs the court that Plaintiffs incorrectly identify it as a "City," when it is in fact a Town organized according to 11 OKLA. STAT. § 12-101, *et seq*.

Plaintiffs' claims[3] are as follows:

- Count I – § 1983 claims for violations of the Fourth and Fourteenth Amendments against Officer Hyler;

- Count II – § 1983 claims for violations of the Fourth and Fourteenth Amendments against Webbers Falls and the Supervisory Defendants based on their policies, practices and customs;

- Count III – claims for violations of the Oklahoma Constitution against Officer Hyler;

- Counts V state law claims of assault, battery, false arrest and/or imprisonment, defamation, and the tort of outrage against Officer Hyler in his individual capacity; and

- Count VI – malicious prosecution against Officer Hyler in his individual capacity.

## I. STANDARD OF REVIEW

Summary judgment will be granted if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether

---

[3] On March 10, 2017, Plaintiffs voluntarily dismissed Counts IV, V, VI and VIII of their Amended Complaint against Webbers Falls and the Supervisory Defendants in their official capacities. Plaintiffs also dismissed Count IV of their Amended Complaint against the Supervisory Defendants in their individual capacities.
    On April 18, 2017, the court dismissed all claims against the Supervisory Defendants in their individual capacities and any claims against "John Doe Mayor."
    The court also notes that Plaintiffs included at Count VII "anticipated" state law negligence claims against Defendant Hyler, stating that they had presented their tort claims to the governing board of Webbers Falls pursuant to the Oklahoma Governmental Tort Claims Act ("GTCA") and that once the prescribed time periods for accepting or rejecting the claims had expired, they *planned to seek leave to amend their Amended Complaint*. While Plaintiffs filed a notice of remaining claims on April 14, 2017, noting that the prescribed time period under the GTCA had passed, Plaintiffs never sought leave to amend to add these claims. These "anticipated" claims did not ripen into proper claims without amendment. Hathaway v. State ex rel. Med. Research & Technical Auth., 49 P.3d 740 (Okla. 2002).

there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In applying the summary judgment standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. Burke v. Utah Transit Auth. & Local 382, 462 F.3d 1253, 1258 (10th Cir. 2006). At this stage, however, Plaintiffs may not rely on mere allegations, but must have set forth, by affidavit or other evidence, specific facts in support of their Amended Complaint. Id.

"Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment." Harvey Barnett, Inc. v. Shidler, 338 F.3d 1125, 1136 (10th Cir. 2003) (citation omitted).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "[A]ffidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991). The court disregards "inadmissible hearsay statements *contained* in affidavits, as those statements could not be presented at trial in any form." Argo v. Blue Cross and Blue Shield of Kansas, Inc., 452 F.3d 1193, 1199 (10th Cir. 2006) (emphasis in original). Similarly, "[t]estimony which is grounded on speculation does not suffice to create a genuine issue of material fact to withstand summary judgment." Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 876 (10th Cir. 2004).

"A movant is not always required to come forward with affidavits or other evidence to obtain summary judgment; once the movant points out an absence of proof on an essential

element of the nonmovant's case, the burden shifts to the nonmovant to provide evidence to the contrary." Hall, 935 F.2d at 1111, n. 5. Additionally, "the court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

*Qualified Immunity*

The affirmative defense of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011). "When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" Id. (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)).

When a defendant raises a qualified immunity defense in response to a motion to dismiss or a motion for summary judgment,[4] the burden shifts to the plaintiff and the court employs a two-part test. Morris v. Noe, 672 F.3d 1185, 1191 (10th Cir. 2012); Brown v. Montoya, 662 F.3d 1152, 1164 (10th Cir. 2011). A plaintiff must show that: (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established at the time of the defendant's alleged misconduct.[5] Id. A plaintiff must establish both prongs to defeat a qualified immunity defense. Id. The court has discretion to decide which of the two prongs to address first in light of the circumstances of the case. Brown, 662 F.3d at 1164. Only if a plaintiff first meets this two-part test does the defendant bear the traditional summary judgment burden to

---

[4] "The legally relevant factors for a qualified immunity decision will be different at the summary judgment state – no longer can the plaintiffs rest on facts as alleged in the pleadings." Stonecipher v. Valles, 759 F.3d 1134, 1148, n.9 (10th Cir. 2014).

[5] The court is not to "define clearly established law at a high level of generality." City and Cnty. of San Francisco, Calif. v. Sheehan, 135 S.Ct. 1765, 1775-76 (2015).

4

show that there are no genuine disputes of material fact and that he or she is entitled to summary judgment as a matter of law. Koch v. City of Del City, 660 F.3d 1228, 1238 (10th Cir. 2011).

II. **UNDISPUTED MATERIAL FACTS**[6]

- On the night of November 25, 2015, Plaintiff Lindsey drove his off-road UTV from the Love's Travel Shop parking lot onto the adjacent access road known as "Love's Lane," then turned left onto State Highway 100. Lindsey proceeded to drive on Highway 100 over the overpass crossing Interstate 40 and continued south until Highway 100 turns into a gravel road.[7] Docket No. 106, Exh. 1, Lindsey Depo., at 6-10; Exh. 2, Mann Depo., at 8-15; Exh. 3, Hyler Depo., at 21-30.

- Plaintiff Mann was a passenger in Lindsey's UTV.

- Lindsey's UTV is a four-wheeled vehicle with a steering wheel and seating for two. It is "an off road vehicle not intended for use on public roads" and contains a warning not to ride on public roads, as it "is not designed for on-road safety."[8] Docket No. 106, Exh. 7.

---

[6] Plaintiffs did not comply with Local Civil Rule 56.1(c), which requires that a response brief in opposition to a summary judgment motion "begin with a section responding, *by correspondingly numbered paragraph*, to the facts that the movant contends are not in dispute and shall state any fact that is disputed." LCvR 56.1(c)(emphasis in original). Instead, Plaintiffs begin with their own "Statement of Material Facts." Plaintiffs do not contend that their statements are undisputed.
  Plaintiffs then respond to Defendants' "Statement of Uncontroverted Facts," often with only a general reference to their own "Statement of Material Facts" *rather than to the evidence*. Plaintiffs fail to refer to a specific statement or statements, but refer in general to their "Statement of Material Facts." This is not helpful and arguably insufficient to oppose Defendants' facts. See Fed. R. Civ. P. 56(c) and (e).

[7] Plaintiffs dispute this statement, referencing generally their "Statement of Material Facts." In their statements 18 – 22, they recount how they arrived at the Love's Travel Shop and then state that they "used the exact same route for departure." Nevertheless, it appears the only difference in Plaintiffs' version is that Highway 100 becomes "County Road 135" at the location it changes to a gravel road. This difference is immaterial.

[8] Plaintiffs dispute the relevance, but not the accuracy of this statement.

5

- The Love's Travel Shop, the adjacent access road, and Highway 100 are and were at the relevant time within the boundary of Webbers Falls.[9] Docket No. 106, Exh. 5, Lively Affidavit.

- Lindsey's UTV did not have a slow moving vehicle triangle affixed to the rear at the time of the incident, and neither Lindsey nor Mann were wearing seat belts.[10] Docket No. 106, Exh. 1, at 2 and 10; Exh. 2, at 17.

- At the time of the incident, Officer Hyler was a certified peace officer, working on duty as a member of the Webbers Falls Police Department. Officer Hyler graduated and received his CLEET certification on November 19, 2015.

- After Lindsey turned left onto Highway 100, he accelerated his UTV southbound to the I-40 overpass "in a manner to drive within the bounds of the speed limit and conditions of the road." Docket No. 121, at 14.

- Officer Hyler testified and it is uncontroverted that he attempted to conduct a traffic stop of Lindsey's vehicle by turning on his emergency lights as Lindsey was driving south toward the I-40 overpass and turning on his sirens as Lindsey drove over the bridge.[11] Docket No. 106, Exh. 3, at 24-26.

---

[9] Plaintiffs add that "the crash site is outside of the town limits of Webbers Falls," but the page they cite is not included in their exhibits and the adjacent pages do not seem to support this statement. In any event, as the court holds below, this fact is not determinative of Plaintiffs' claims.

[10] Plaintiffs object to the relevance, but not the accuracy of this statement. They argue that under Oklahoma law, evidence of the lack of a slow moving vehicle triangle is inadmissible. This court, of course, applies the Federal Rules of Evidence. Moreover, the court considers the lack of a slow moving vehicle triangle only with regard to whether Officer Hyler had a reasonable suspicion that Lindsey had committed a traffic violation. The court considers the seat belts only with regard to whether Officer Hyler had probable cause to arrest Plaintiffs.

[11] Plaintiffs argue that Officer Hyler was in the Love's parking lot rather than traveling south on Highway 100 just before he began the pursuit. The images Plaintiffs attach do not show

6

- Lindsey testified that he never heard a siren. Docket No. 123, Exh. 9, at 19. Lindsey testified that he did not see Officer Hyler's lights until after he crossed "Dirty Creek bridge" on the gravel road. Lindsey testified that he then "kind of bumped" Mann to alert him to the lights. Docket No. 123, Exh. 9, at 14-16. Mann testified that he first noticed Officer Hyler's lights when Lindsey told him "to look back and said there were lights back there" after they crossed Dirty Creek. Docket No. 123, Exh. 10, at 5-7.

- Lindsey did not stop or slow his vehicle as he approached the I-40 overpass.[12]

- Officer Hyler notified Muskogee 911 dispatch that he was attempting a traffic stop and that the suspect was failing to yield.[13]

- Shortly after Highway 100 crosses I-40, the pavement ends and the gravel road begins. Lindsey slowed his UTV briefly at the transition from pavement to gravel, then resumed his normal driving speed.

- Upon reaching the gravel road, Officer Hyler's vision was obstructed by the dust created by Lindsey's vehicle ahead of him.

- Officer Hyler testified that because his vision was obstructed by the dust and he had lost sight of Lindsey's UTV, he slowed his vehicle and continued driving south following the dust trail left by the UTV.[14] Docket No. 106, Exh. 3, at 7-11.

---

this, but rather some unidentifiable lights in the darkness. Nevertheless, where Officer Hyler was before he began the pursuit is immaterial.

[12] Again referencing generally their "Statement of Material Facts," Plaintiffs argue about what this fact means, but do not controvert the fact itself.

[13] Plaintiffs argue about what this fact means, but do not controvert the fact itself.

[14] Plaintiffs dispute this statement, again with reference only generally to their "Statement of Material Facts." In Plaintiffs' statement number 29, they state that Officer Hyler was approaching at a high rate of speed, but none of their cited evidence supports this fact. In fact, Lindsey did not testify as to Officer Hyler's rate of speed. He testified only that he first noticed the lights after he crossed Dirty Creek bridge and that Officer Hyler was "right on me" and "like I said, the last thing I remember he was coming up on me." Docket No. 123, Exh. 9, at 16-17.

7

- Officer Hyler testified that after driving less than a mile on the gravel road, he came upon a right-hand curve in the road, and there he saw Lindsey's UTV rolled onto the driver's side. He also testified that he did not witness the crash or make contact with the UTV.[15]

  Docket No. 106, Exh. 3, at 31-33, 40.

---

Plaintiffs also cite to Officer Robby Baker, who arrived on the scene after the incident. Officer Baker, however, was not denominated as an expert, nor was he a witness to Officer Hyler's rate of speed. His testimony, therefore, is based on speculation and would not be admissible under Rule 701 or 702.

In Plaintiffs' statement number 30, they note that Officer Hyler made two transmissions on the radio – the first announcing the attempt to stop the UTV, the second stating the UTV was "still southbound" on the dirt road. This does not controvert Defendants' statement of fact. Officer Hyler testified that he was following the southbound dust trail.

[15] Plaintiffs dispute this statement, referencing generally their "Statement of Material Facts." In their first section of statements, Plaintiffs baldly assert Officer Hyler crashed into Lindsey's UTV. They cite to their accident reconstructionist Mr. Blevin's report and deposition. Mr. Blevins opined that there was contact damage to the right rear of the UTV, but that he could not tell what caused it. Docket No. 123, Exh. 4, at 5-11. He described the contact damage as scuffs and said he did not see any paint transfer, any cracks, or any dents. Id. at 13. He could not give any scientific opinion about the amount of force on the plastic portion of the tailgate that would result in scuffs or scratches, but not cause dents or cracks. Id. at 13-14. He opined that everything on the right rear had "moved a little bit," but that they appear to be "fairly flush" rather than "pushed in or pushed out." Id. at 14 and 17. He opined that it "probably was pushed in and then it came back," as it is plastic. Id. at 18.

Ultimately, Mr. Blevins "could not match up any damage on the patrol car with any damage on the UTV." Id. at 20. Mr. Blevins further testified: "I've never put in my report or testified that Officer Hyler's car hit the back of the Can-Am. So how can I make a mark on there where it hit it when I've already told you that I didn't put in my report that it did?" Docket No. 106, Exh. 15, at 4. Mr. Blevins testified that based on everything he had seen he could not testify that Officer Hyler's car hit the Lindsey's UTV. Id. Mr. Blevins admitted that the damage to the UTV could have been caused by Lindsey misjudging the right-hand turn, understeering and going off the left side of the road. Id. at 5. Ironically, Plaintiffs seem to contend that the jury should be allowed to speculate that Officer Hyler collided with the vehicle when their own expert refuses to do so.

Plaintiffs also cite to Officers Baker and Gilbert who arrived after the incident. Docket No. 123, Exh. 8, at 11-12; Exh. 7, at 43-47. Officers Baker and Gilbert were not denominated as experts, nor were they witnesses to the incident. Their testimony was based on hearsay and speculation and would not be admissible under Rule 701 or 702. Lindsey and Mann do not recall the incident, so could not testify as to whether Officer Hyler struck the UTV. Accordingly, the court finds that Plaintiffs have not raised an issue of fact with regard to whether Officer Hyler's vehicle collided with Lindsey's UTV. Nevertheless, as the court holds below, this fact is not determinative of Plaintiffs' claims.

- Neither Lindsey nor Mann recall the crash.

- Mann was 18 years old at the time of the accident. He and Lindsey had been drinking beer.[16] Docket No. 106, Exh. 1, at 23-25; Exh. 2, at 2-7.

- Mann was charged with being a minor in possession of alcohol and public intoxication.[17] Docket No. 106, Exh. 11.

- Lindsey was charged with, *inter alia*, transporting an open container of beer, failure to use a seatbelt, eluding a police officer and unauthorized use of an ATV/UTV motor vehicle.[18] Docket No. 106, Exh. 12.

### III. FEDERAL CLAIMS

Plaintiffs bring claims against Officer Hyler, Webbers Falls, and the Supervisory Defendants pursuant to 42 U.S.C. § 1983 for alleged violations of his Fourth and Fourteenth Amendments.

---

[16] Plaintiffs object to the relevance of this statement and argue that Lindsey testified that he was not intoxicated. They also argue that there is no indication Officer Hyler suspected they were drinking when he began the pursuit.

[17] Plaintiffs object to the relevance of this statement. They argue that Officer Hyler did not know Plaintiffs were drinking when he began the pursuit. They also argue that Mann was the passenger and his drinking did not contribute to the wreck.

[18] Plaintiffs object to the relevance of this statement. They argue that Officer Hyler did not know Plaintiffs were drinking when he began the pursuit. As becomes clear below, this statement of fact is material as it relates to probable cause to arrest, not to Officer Hyler's pursuit. Plaintiffs also argue that the warrantless blood draw without consent is inadmissible. Without deciding that question, the court did not include the charge for driving under the influence in its statement of facts and does not consider Lindsey's blood alcohol level in its analysis.

## A. Fourth Amendment – Excessive Force – Officer Hyler

To prevail on a claim of excessive force under § 1983, a plaintiff must establish that a defendant acting under color of state law "seized" him. Arnold v. Curtis, 359 Fed.Appx. 43, 47 (10th Cir. 2009). "Seizure" means a "governmental termination of freedom of movement through means intentionally applied." Id. The "ultimate question 'is whether the officers' actions are objectionably reasonable in light of the facts and circumstances confronting them.'" Cavanaugh v. Woods Cross City, 625 F.3d 661, 664 (10th Cir. 2010) (citation omitted).

Plaintiffs argue that Officer Hyler used excessive force when he pursued Lindsey's UTV for failure to yield, a "very minor traffic violation."[19] Viewing the evidence and drawing reasonable inferences therefrom in the light most favorable to Plaintiffs, Officer Hyler began pursuing Lindsey's UTV for a minor traffic violation on Highway 100 and continued that pursuit

---

[19] In their response to Defendants' argument, Plaintiffs seem to abandon any argument that Lindsey did not commit a traffic violation, arguing only that Officer Hyler's pursuit for a "very minor traffic violation" was reckless. To the extent Plaintiffs intend to argue that Lindsey yielded because he used his brakes, Plaintiffs have not created an issue of fact. Even if he braked, that does not show that he came to a complete stop or that he yielded. Moreover, even absent a failure to yield, Officer Hyler testified that he was looking for a slow moving vehicle triangle, and Lindsey's UTV did not have one. A traffic stop is valid under the Fourth Amendment if an officer has a "reasonable suspicion that this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction." United States v. Vercher, 358 F.3d 1257, 1261 (10th Cir. 2004) (citation omitted). "Moreover, reasonable suspicion may be supported by an 'objectively reasonable' good faith belief even if premised on factual error." Id.
    Additionally, the court does not agree with Plaintiffs' characterization of "failure to yield" as a "very minor" traffic violation. Nevertheless, even if Officer Hyler began his pursuit based on a "very minor" traffic violation, attempting to elude an officer is definitely not "very minor," and by the time they reached the gravel road, Officer Hyler had an objectively reasonable belief that Plaintiffs were attempting to elude him.
    The court also notes that in their eighth "Statement of Material Fact," Plaintiffs argue that there was a routine pattern and practice of the Chief and Assistant Chief of Police in Webbers Falls advising officers that probable cause always exists for a stop. Even if such pattern or practice was in place, in the instance before the court, Officer Hyler had an objectively reasonable suspicion that Lindsey violated the traffic laws.

10

as it turned into a gravel road.[20]  Plaintiffs did not hear Officer Hyler's siren and thus were apparently unaware of any "pursuit."  They did not see his lights until just before they crashed and he was "right on" them or "coming up on" them.  The court determined that Plaintiffs have not created an issue of fact as to whether Officer Hyler's patrol car hit Lindsey's UTV, but assuming arguendo that it did, the outcome is the same.

No Fourth Amendment seizure takes place where a pursuing police car seeks to stop a suspect "'only by the showing of authority represented by flashing lights and continuing the pursuit,' but accidentally [stops] the suspect by crashing into him."  County of Sacramento v. Lewis, 523 U.S. 833, 844 (1998) (citing Brower v. County of Inyo, 489 U.S. 593, 597 (1989)).  The same is true if the suspect being pursued loses control of his vehicle and subsequently crashes.  Brower, 489 U.S. at 597.

The Supreme Court has held that "a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement, . . . but only when there is a governmental termination of freedom of movement *through means intentionally applied*."  Brower, 489 U.S. at 596-97 (emphasis in original).  Plaintiffs have shown no evidence that Officer Hyler *intentionally* used his vehicle to stop Lindsey's UTV, either by crashing into it or by causing Lindsey to lose control.[21]  Plaintiffs have not established a Fourth Amendment violation.

---

[20]   Plaintiffs also argue that once they crossed onto the gravel road, they were outside Officer Hyler's jurisdiction, and thus he had no authority unless he was in "hot pursuit."  Plaintiffs argue that he was no longer in "hot pursuit" once on the gravel road based on his testimony that he could no longer see the UTV and so slowed down and followed the southbound cloud of dust looking for it.  This does not follow.  He was still in "hot pursuit."  The speed of the pursuit because of the terrain and visibility does not change the legal nature of the pursuit.
[21]   Plaintiffs argue that Officer Gilbert believes Officer Hyler made contact with the UTV and that the contact was consistent with a tactical vehicle intervention maneuver.  Gilbert,

Moreover, Officer Hyler is entitled to qualified immunity as to this claim. The court has already held that Officer Hyler did not violate Plaintiffs' Fourth Amendment rights. Additionally, Plaintiffs do not have a clearly established right not to be pursued for a minor traffic violation down a gravel road. They also do not have a clearly established right not to be pursued down a gravel road when an objectively reasonable officer would believe they were attempting to elude him. As the Supreme Court has directed, the court does not "define clearly established law at a high level of generality." Sheehan, 135 S.Ct. at 1775-76. "Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures." Id. at 1776.

### B. Fourth Amendment – Plaintiffs' Arrest[22] – Officer Hyler

"When officers have probable cause to believe that a person has committed a crime in their presence, the Fourth Amendment permits them to make an arrest." Virginia v. Moore, 553 U.S. 164, 178 (2008). The question is whether the officer had any objectively reasonable belief that probable cause existed. Apodaca v. City of Albuquerque, 443 F.3d 1286 (10th Cir. 2006). "If an officer has probable cause to believe that an individual has committed *even a very minor criminal offense* in his presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater v. City of Lago Vista, 532 U.S. 318, 353 (2001) (emphasis added).

To the extent that Plaintiffs intend to include claims under the Fourth Amendment based on their arrest, Officer Hyler is entitled to summary judgment. Lindsey was not arrested, but even if he had been, probable cause certainly existed for his arrest. Whether he saw the lights or

---

however, was not denominated as an expert and did not witness the accident. His testimony is based on speculation and is not admissible under Rule 701 or 702.
[22] Plaintiffs did not respond to Defendants' argument as to this claim. The court, nevertheless, includes a brief analysis of the claim.

heard the siren, any officer would be objectively reasonable in believing Lindsey was attempting to elude the police. He also was not wearing a seatbelt. Mann was arrested, and probable cause existed for his arrest. Mann was 18 years old and drinking. He also was not wearing a seat belt.

Again, moreover, Officer Hyler is entitled to qualified immunity. Plaintiffs have not shown a violation of their Fourth Amendment rights or that they had a clearly established right to not be arrested under the circumstances. Plaintiffs' Fourth Amendment claims against him, therefore, are dismissed.[23]

### C. Fourteenth Amendment – Officer Hyler

Plaintiffs brings Fourteenth Amendment claims against Defendants, arguing that Officer Hyler's pursuit of them down a gravel road for a minor traffic violation and ultimately either crashing into them or causing Lindsey to lose control was so outrageous as to shock the conscience. Officer Hyler is entitled to summary judgment. In a high speed chase aimed at apprehending a suspected offender, "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." Lewis, 523 U.S. at 836.

---

[23] Plaintiffs did not include any claim in their Amended Complaint for a Constitutional violation based on a warrantless blood draw. To the extent they intend to bring such a claim for the first time in their response to the summary judgment motions, the court does not consider it. Nevertheless, Officer Hyler would be entitled to summary judgment on such a claim. 47 OKLA. STAT. § 10-104B.
  To the extent Plaintiffs intend to argue that Officer Hyler moved them after the crash and that such movement was excessive force, Officer Hyler is entitled to summary judgment. Even if Officer Hyler moved Plaintiffs' unconscious bodies from the UTV, there is no evidence he did so in an attempt to terminate their freedom of movement. Although imprudent, this does not violate their Fourth Amendment rights. Even if Officer Hyler partially rolled Lindsey to find his identification, there is no evidence he did so in an attempt to terminate Lindsey's freedom of movement. Again, while perhaps imprudent, this does not violate Lindsey's Fourth Amendment rights.

In Lewis, a police officer saw two boys, 18 and 16 years old, approach and pass at a high speed on a motorcycle. He pursed them using his emergency lights and siren through a residential neighborhood, as the motorcycle weaved in and out of oncoming traffic. They "reached speeds up to 100 miles an hour, with [the officer] following at a distance as short as 100 feet; at that speed, his car would have required 650 feet to stop." Id. at 837. The pursuit ended when the motorcycle driver tipped over trying to make a sharp turn. The officer tried to stop, but skidded into the motorcycle passenger, who died. Id.

The Court noted that "[t]he touchstone of due process is protection of the individual against arbitrary action of government." Id. at 845 (citation omitted). The court also recognized that "[a] police officer deciding whether to give chase must balance on one hand the need to stop a suspect and show that flight from the law is no way to freedom, and, on the other, the high-speed threat to all those within stopping range, be they suspects, their passengers, other drivers or bystanders." Id. at 853. The Court found that the officer instinctively responded and that "[w]hile prudence would have repressed the reaction, the officer's instinct was to do his job as a law enforcement officer, not to induce [the motorcycle driver's] lawlessness, or to terrorize, cause harm, or kill." Id. at 855. The Court found that the officer's behavior did not shock the conscience and held "that high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." Id. at 854-55.

Graves v. Thomas, 450 F.3d 1215 (10th Cir. 2006) involved an officer who regularly pursued teenage motorists at high speeds for traffic violations. Even though he had been ordered to discontinue this practice, one evening he began a pursuit after he observed a teenage motorist driving with his lights off. He had a history of chasing this teenager and had told him that he

would get him "one way or the other." The officer chased the motorist "to a point where the highway curved and intersected a dirt road." Id. at 1219. The motorist "continued down the dirt road, kicking up a dust trail which slowed [the officer]." Id. At the point the dirt road intersected again with pavement, the officer lost track of the motorist, stopped and shut down his engine to listen. Id. When he heard the sound of a speeding car to the north, he headed in that direction.

Ultimately, the motorist he was chasing collided with another vehicle and died as a result of his injuries. Id. at 1220. The Tenth Circuit noted that the officer was "faced with an unexplained flight from an attempted traffic stop" and held that the plaintiff had not shown the officer's reaction was motivated by "'a purpose to cause harm unrelated to the legitimate object of arrest,' or [to] worsen [the motorist's] legal plight.'" Id. at 1223 (citing Lewis, 523 U.S. at 836).

Officer Hyler's actions do not shock the conscience. He attempted a traffic stop after observing a traffic violation, and any objectively reasonable officer would have believed Lindsey's failure to stop was an attempt to elude. Officer Hyler's reaction was to pursue Lindsey. He continued the pursuit, but once the terrain and visibility were an issue, he slowed his rate of speed and followed the southbound dust cloud. Plaintiffs argue that he should have stopped the pursuit once they hit gravel because it was too dangerous. The court does not agree, and as is clear from Lewis and Graves, that is not the law.[24] The pursuit in Lewis involved an officer chasing a motorcycle at speeds of up to 100 miles per hour weaving in and out of oncoming traffic through a residential area. That is obviously more dangerous than the pursuit

---

[24] See also Green v. Post, 574 F.3d 1294 (10th Cir. 2009) (holding that an officer negligently speeding through a yellow light without his siren or lights on in response to a call that was not an emergency, but required a rapid response, resulting in a crash and death did not rise to the level of conscience-shocking deliberate indifference).

here. In Graves, the officer chased a teenage motorist down a dirt road and then even stopped and shut down his motor to listen for the motorist before continuing his pursuit. While Officer Hyler slowed when all he could see was a southbound dust cloud, he never stopped his pursuit.

Even if Plaintiffs are correct that it would have been prudent to terminate the pursuit, Officer Hyler's "instinct was to do his job as a law enforcement officer, not to induce [Lindsey's] lawlessness, or to terrorize, cause harm, or kill." Lewis, 523 U.S. at 855. Plaintiffs have presented no evidence that Officer Hyler was motivated by "a purpose to cause harm unrelated to the legitimate object of arrest" or to worsen Plaintiffs' legal plight. Graves, 450 F.3d at 1223. Officer Hyler's actions do not give rise to liability under the Fourteenth Amendment.

Moreover, Officer Hyler is entitled to qualified immunity. The court has already held that Officer Hyler did not violate Plaintiffs' Fourteenth Amendment rights. Additionally, Plaintiffs do not have a clearly established right not to be pursued for a minor traffic violation down a gravel road. They also do not have a clearly established right not to be pursued down a gravel road when an objectively reasonable officer would believe they were attempting to elude him.

**D. § 1983 Claims – Webbers Falls & the Supervisory Defendants**

The court held above that Officer Hyler did not violate Plaintiffs' constitutional rights. The court need not delve further with regard to the § 1983 claims against Webbers Falls and the Supervisory Defendants. "If a person has suffered no constitutional injury at the hands of an individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point." City of Los Angeles v. Heller, 475

16

U.S. 796 (1986). "A municipality may not be held liable for the actions of its employees if those actions do not constitute a violation of a plaintiff's constitutional rights." Livsey v. Salt Lake Cnty., 275 F.3d 952, 958 (10th Cir. 2001).

## IV. STATE LAW CLAIMS

Plaintiffs included a claim for violation of the Oklahoma Constitution against Officer Hyler. They also brought state law claims of assault and battery, false arrest and/or imprisonment, defamation, the tort of outrage and malicious prosecution against Officer Hyler. Plaintiffs further planned to add a claim for negligence under the GTCA. As the federal claims have been dismissed, the court declines to exercise supplemental jurisdiction over these state law claims.

"Section 1367(c) provides conditions where district courts may decline to exercise supplemental jurisdiction, and the Supreme Court repeatedly has determined that supplemental jurisdiction is not a matter of the litigants' right, but of judicial discretion." Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004) (citations omitted). The Tenth Circuit has stated, "[w]hen all federal claims have been dismissed, the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims." Smith v. City of Enid, 149 F.3d 1151, 1156 (10th Cir. 1998) (citing 28 U.S.C. § 1367(c)) (emphasis added). "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).

The court has considered the factors in 28 U.S.C. § 1367(c).[25] The court has also considered and weighed the values of judicial economy, convenience, fairness, and comity. Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988). The balance of these factors indicates the remaining claims belong in state court; thus the court declines to exercise jurisdiction over them.

## V. CONCLUSION

Accordingly, Defendants' motions for summary judgment [Docket Nos. 106 and 107] are hereby GRANTED as to the federal claims. The court declines to exercise jurisdiction over the remaining state law claims.

**IT IS SO ORDERED** this 18th day of October, 2017.

_____
**THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA**

---

[25] (1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.
28 U.S.C.A. § 1367.